## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### HELENA  DIVISION

|  |  |  |
|---|---|---|
| | * | |
| In Re:  EDDIE VARNOLD | * | Bankruptcy Case No.   2:05-bk-27197M |
| HAMILTON | * | AP Case No.              2:06-ap-119 |
| Debtor | * | |
| | * | |

_____

|  |  |  |
|---|---|---|
| | * | |
| EDDIE VARNOLD HAMILTON | * | |
| | * | |
| Appellant | * | |
| | * | Case No. 2:08CV00163 SWW |
| V. | * | |
| | * | |
| NANCY HAMILTON | * | |
| | * | |
| Appellee | * | |
| | * | |

### ORDER

In this bankruptcy appeal, Debtor Eddie V. Hamilton, hereinafter "Appellant," appeals a decision of the Bankruptcy Court denying him discharge under 11 U.S.C. § 727(a)(4), finding specific debts nondischargeable under 11 U.S.C. §§ 523(a)(6) and 523 (a)(15), and reducing those nondischargeable debts to a judgement in favor of Appellant's former wife, Nancy Hamilton, hereinafter "Appellee."  After careful consideration, and for the reasons that follow, the decision of the Bankruptcy Court is affirmed.

### I.

1

In bankruptcy proceedings, a district court ordinarily acts as an appellate court.  *See*

*Brown v. Mt. Prospect State Bank* (*In re Muncrief*), 900 F.2d 1220, 1224 (8th Cir. 1990).   A

district court reviews the bankruptcy court's legal conclusions de novo, and its findings of fact

under the clearly erroneous standard.  *Id.*

## II.

By a divorce decree dated December 14, 2004, the Circuit Court of Franklin County,

Arkansas granted Appellant an absolute divorce from Appellee.  The divorce decree incorporates

the parties' property settlement, which provides that Appellee shall receive a computer, monitor,

games, and movies that were in Appellant's possession.  [Tr. Ex. #9, at 2.]   The decree provides

that Appellant would deliver the foregoing items to Appellee, but, with the exception of a portion

of the movies, she never received them. [Tr. 134-35.]

Additionally, the decree states that Appellee shall receive a van, utility trailer, stock

trailer, three mares, three colts, one stud, all paperwork related to the aforementioned horses, and

all tack and saddles for the horses.  [*Id.*]   The decree states, in pertinent part, as follows: "The

parties have agreed that the horses shall continue to be taken care of, and fed, by [Eddie

Hamilton] until [Nancy Hamilton] takes possession of, or sells, said horses.  That the parties

agree that reasonable time to accomplish the exchange of possession of the horses is

approximately sixty (60) days." [*Id.*]

Appellant admits that he stopped feeding the horses on January 17, 2005, before sixty

days from entry of the divorce decree had expired. [Tr. 325.]  On February 15, 2005, the day the

parties' divorce decree was entered, Appellee attempted to take possession of the  horses, and

Appellee's attorney, Dianna Ladd, received call from animal control requesting that she assist

Appellee.  Ladd traveled to where the horses were located, and she viewed a terrible scene. Some of the horses were dead, and others were so malnourished they could not stand. [Tr. 96-98.]

Several of the horses initially survived, but a pregnant mare was later euthanized, and her foal was stillborn.  Another pregnant mare survived but also delivered a stillborn foal.  The surviving horses, in desperate need of medical care, were taken to a safe house.  Because Appellee was unable to pay for the medical treatment and care the horses had received and would continue to require, she conveyed the horses, stock trailer, and horse tack to the safe house. [Tr. 154-55.]

On October 14, 2005, Appellant filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.  Appellee  commenced an adversary proceeding, objecting to Appellant receiving a general discharge under 11 U.S.C. § 727 and asking that specific debts owed to her pursuant to the divorce decree be declared nondischargeable.  After a trial on the merits, the Bankruptcy Court entered an order denying discharge under 11 U.S.C. § 727(a)(4)(A) for knowingly and fraudulently making a false oath or account.  Additionally, the Court entered judgment in favor of Appellee for $40,840, pursuant to 11 U.S.C. § 523(a)(6), for willful and malicious injury to Appellee's horses and tack and judgment for $3,000, pursuant to 11 U.S.C. § 523(a)(15), for the value of computer, movies, and games awarded to Appellee in the divorce decree.

## III.

Appellant does not challenge the Bankruptcy Court's decision to deny discharge under § 727(a)(4)(A), or the finding that he willfully and maliciously stopped feeding Appellee's

horses, despite his obligation to do so, resulting in a nondischargeable debt for damages pursuant to § 523(a)(6).  Nor does Appellant appeal the Bankruptcy Court's finding that the value of the computer, monitor, games and movies awarded to Appellee in the parties' divorce decree is excepted from discharge under § 523(a)(15).  The sole issues on appeal are (1) whether the Bankruptcy Court used the correct standard to determine the amount of Appellant's nondischargeable debt under § 523(a)(6) and (2) whether the evidence supports the Bankruptcy Court's findings as to the value of the debts excepted under §§  523(a)(6) and 523 (a)(15).

Standard for Fixing Debt Under § 523(a)(6)

The proper standard for reducing a unliquidated debt, determined to be nondischargeable under § 523(a)(6), presents a legal question, which is reviewed de novo.  Appellant takes the position that the proper measure  "is the difference in the fair market value of the items immediately after the breach subtracted from the fair market value immediately before the breach."  Docket entry #5, at 12.  However, the Bankruptcy Court determined the amount of Appellant's nondischargeable debt under § 523(a)(6) based on the fair market value of the horses and tack before Appellant injured the horses by willfully breaching his obligation to care for them.  *See* Memorandum Opinion, docket entry #2, at 30.

Section § 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."  This exception addresses the type of injury inflicted by intentional torts, not the breach of promises.  *See Kawaauhau v. Geiger*,  523 U.S. 57, 61-62, 118 S. Ct. 974, 977 (1998).  The proper measure of damages for conversion, the common-law tort for wrongful possession or disposition of another's property, is the market value of the property at the time and place of its conversion, not the dimunition in value as

4

suggested by Appellant. *See Elliott v. Hurst,* 307 Ark. 134, 817 S.W.2d 877 (1991).

Accordingly, the Court finds that the Bankruptcy Court used the proper standard to determine the

amount of the nondischargeable debt under § 523(a)(6).  *See Bonfiglio v. Harkema Associates,*

*Inc.*, 171 B.R. 245, 251 (E.D. Mich. 1994), *affirmed, In re Bonfiglio*, 82 F.3d 417 (6th Cir. 1996).

 <u>$40,840 for Horses and Tack</u>

 Next, Hamilton challenges the sufficiency of evidence supporting the Bankruptcy Court's

factual  findings regarding the fair market value of Appellee's property, which triggers the clear

error standard of review.  "'To be clearly erroneous, a decision must strike [the reviewing court]

as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a

five-week-old, unrefrigerated dead fish.'" *Papio Keno Club, Inc. v. City of Papillion*, 262 F.3d

725, 729 (8th Cir.2001)(quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228,

233 (7th Cir.1988)).

 At trial, Appellee presented a document itemizing her estimation of the value of the

horses and tack, which totaled $40,840. [Tr. 157-58; Tr. Ex. #19.]   Appellee testified that she

had been raising horses since 1996, and in valuing the horses, she considered their age, weight,

breeding, and training. [Tr. 155-165.]  Appellee also presented copies of internet advertisements,

offering horses for $1,000 to $2,000 per horse and $20,000 for stallions [Tr. Ex. #16.], prices

which are consistent with her valuation.

 Appellant testified that the horses were not valuable and that he purchased them for $125

to $750 per horse, but he provided no documentation recording the sales.  Hamilton also testified

that he thought the horses were infected with a degenerative disease, but he produced no

corroborating evidence to support this claim.  Hamilton's sister, Joy Bently, testified that she had

purchased ten to twelve horses in her lifetime, and in her opinion, the horses were worth no more than $500.  But on cross examination, Bently acknowledged that she had not personally purchased horses in the past, and she based her valuation, in part, on the poor condition of the horses in December 2004, when they were not receiving adequate care. [Tr. 269, 270.]

The Bankruptcy Court found Nancy Hamilton's estimate of the fair market value of $40,840 for the horses and tack was reasonable and supported by some corroborating evidence. On the other hand, the Court found that Eddie Hamilton offered no credible evidence, stating, "The Debtor lacked credibility when he testified on other subjects, a fact that tends to support an inference of lack of credibility as to his valuation of the horses and tack as well."  Memorandum Opinion, docket entry #2, at 30.

Appellant argues that the Bankruptcy Court's assessment of the fair market value of the horses and tack should be reversed for the following reasons: (1) the Court's assessment was based solely on Appellee's testimony, (2) the Court accepted Appellee's testimony and "totally disregarded" his, (3) Appellee based her valuation on replacement cost, rather than fair market value, and (3) Appellee failed to mitigate damages.

The Bankruptcy Court  properly considered Appellee's testimony regarding the value of the horses and tack.  *See In re Whitt*, 57 B.R. 206 (Bkrtcy. S.D. Ohio 1986)(owner of personal property competent to testify as to value)*; see also Farley v. Henson*, 11 F.3d 827, 837 (8th Cir. 1993)(citing *McCorkle v. Valley Forge Ins. Co.*, 11 Ark. App. 41, 665 S.W.2d 898, 901 (1984))("It is a rule in Arkansas that testimony of the owner of personal property concerning the value of that property is sufficient evidence to prove value.").  Furthermore, the Court will not disturb the finding that Appellee's testimony was credible and persuasive and Appellant's

6

testimony something less.

The Court finds no merit to Appellant's argument that Appellee based her valuation of the horses and tack replacement something other than fair market value.  Although Appellee uttered the phrase "replacement value" in her testimony, she clarified that she assigned values to the horses based on "the value of right then and there, in the market, as to what the price of the horse is actually worth."   [Tr. 234-35.]

Finally, Appellant argues that Appellee failed to mitigate her damages because she failed to use $5,000 she received on February 15, 2005 pursuant to the divorce decree to care for the horses, and she "made no effort to sell any of the items she did receive in order to mitigate her damage or establish the parameters for her damages."  Docket entry #5, at 8.  Appellee testified that she used the $5,000 she received on February 15, 2005 to pay for car repairs and bills that were due at that time, and she was not billed for the care of the horses until July 2005  [Tr. 231-32; 235-36.]  Appellant presented no evidence showing otherwise.  Additionally, Appellant presented no evidence regarding "items" that Appellee received in the property settlement which, he claims, Appellee could have sold to mitigate her damages.

The Bankruptcy Court made no specific findings as to whether Appellee mitigated her damages, and this Court may not make an independent factual finding when the bankruptcy court's decision is silent or ambiguous.  *See Brown v. Mt. Prospect State Bank* (*In re Muncrief*), 900 F.2d 1220, 1224 (8th Cir. 1990).   However, Appellant had the opportunity to present evidence at trial in support of his claim that Appellee failed to mitigate damages, and the record contains no evidence presenting a genuine issue of fact on the issue.  *See Brown v. Mt. Prospect State Bank* (*In re Muncrief*), 900 F.2d 1220, 1224 (8th Cir. 1990)(stating that "remand is not

7

necessary when the evidence is documentary, the facts are undisputed or the record presents no genuine issue of material fact."). Accordingly, the Court finds remand unnecessary and finds no error in the Bankruptcy Court's assessment of damages.

       <u>$3,000 for Computer, Monitor, Games, and Movies</u>

Under 11 U.S.C. § 523(a)(15) non-support debts that arise from divorce proceedings are excepted from discharge. Appellant acknowledged in the divorce proceedings that he had possession of the computer, monitor, games, and movies awarded to Appellee, and he does not dispute that Appellee never received the items or that they are excepted from discharge under § 523(a)(15). Furthermore, while Appellant offered no evidence at trial as to the value of the items, Appellee testified that, based on information she gathered from the internet and "asking around, looking and seeing" the items had a value $3,000. The Court finds that the Bankruptcy Court's finding that the items had a fair market value of $3,000 was not clearly erroneous.

**IV**.

For the reasons stated, it is hereby ordered that the decision of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED THIS 27TH DAY OF JANUARY, 2009.


                               <u>/s/Susan Webber Wright</u>
                               UNITED STATES DISTRICT JUDGE